# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **MOUNTAIN VALLEY PIPELINE, LLC** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**8.60 ACRES OF LAND, OWNED BY** )<br>**DOWDY FARM LLC, et al.,** )<br>)<br>**Defendant.** ) | **CIVIL ACTION NO. 7:19–CV–223** |

## REPORT & RECOMMENDATION

This matter is before me on Defendant Dowdy Farm, LLC's ("Dowdy Farm") motion to enforce settlement with Plaintiff Mountain Valley Pipeline, LLC ("MVP"). Dkt. 19. Dowdy Farm contends that it reached an agreement with MVP as to the amount of compensation and the terms of a Right of Way agreement for MVP to construct and maintain a natural gas pipeline on the property of Dowdy Farm. See Dkt. 19, 26, 30. I recommend **DENYING** Dowdy Farm's motion because the parties did not have a meeting of the minds as to all material terms of the Right of Way agreement.

**Background**

In 2017, MVP filed a Complaint seeking to condemn easements necessary to construct an interstate natural gas pipeline, including easement on two parcels of land Dowdy Farm owns in Giles County, Virginia. Compl. ¶ 1, Mountain Valley Pipeline, LLC v. Easements, No. 7:17–cv–492 (W.D. Va. Oct. 24, 2017). After Judge Dillon granted MVP immediate possession of each easement it sought, including those of Dowdy Farm, to begin construction of the pipeline, the only issue remaining was the amount of just compensation MVP owed for the condemnation of

the landowners' property. Id. at Dkt. 537. MVP and Dowdy Farm attempted to mediate the issues between them. Id. at Dkt. 882. They failed to reach an agreement at mediation, but after mediation concluded, they continued their efforts to negotiate an agreed compromise. See, e.g., Dkt. 19–6. Eventually, the parties reached an apparent settlement regarding the amount MVP would pay Dowdy Farm and several nonmonetary terms, including a term requiring Michael Williams ("landowner") to "compl[y] with 811"[1] if he engaged in any digging activity to repair a water line which ran across MVP's pipeline easement. See Dkt. 19–2. The parties' interpretation of this term that the landowner "compl[y] with 811" differed, however, which forms the basis of the present dispute. See Dkt. 19–9, p. 3–5; Dkt. 20, p. 1–2; Dkt. 26, p. 9–12.

Dowdy Farm interprets "complies with 811" to mean that the landowner may hand dig on the easement to fix underground water utility lines without following 811's notification process. Dkt. 19–10, p. 5–6. MVP, meanwhile, understands the term to mean that the landowner may not engage in any digging activities in the easement, including hand digging without first complying with the notification process under the 811 statute. Id. at 4.

**Legal Standards**

District Courts have inherent authority to enforce settlement agreements. Hensley v. Alcon Labs., Inc., 277 F.3d 535, 540 (4th Cir. 2002). To exercise this authority, the court (1) must find that the parties reached a complete agreement and (2) must be able to determine the agreement's terms and conditions.[2] Id. at 540–41. The burden of proof is on the party seeking to

---

[1] "811" refers to Virginia's 811 statute, the Underground Utility Damage Prevention Act (§§ 56–265.14 et seq.).

[2] If there is a factual dispute over the existence of an agreement, the authority of counsel to enter into the agreement, or over the agreement's terms, then the District Court must conduct a plenary evidentiary hearing. Hensley, 277 F.3d at 540.

2

enforce the settlement agreement. Saza, Inc. v. Zota, No. 3:11–cv–363, 2012 WL 527370, at *5 (E.D. Va. Feb. 16, 2012).

Settlement agreements are contracts and a court must draw upon standard contract principles in reaching its decision. Power Servs., Inc. v. MCI Constructors, Inc., 3 F. App'x 190, 192 (4th Cir. 2001) (citing Byrum v. Bear Inv. Co., 936 F.2d 173, 175 (4th Cir. 1991)). "'It is elementary that mutuality of assent—the meeting of the minds of the parties—is an essential element of all contracts.'" Lacey v. Cardwell, 217 S.E.2d 835, 843 (Va. 1975) (quoting Green's Ex'rs v. Smith, 131 S.E. 846, 848 (Va. 1926)); see also Silicon Image, Inc. v. Genesis Microchip, Inc., 271 F. Supp. 2d 840, 851–52 (E.D. Va. 2003) ("Assent . . . is crucial to the formation of the contract"). Courts often clarify that mutuality of assent is required only for material terms.[3] See Phillips v. Mazyck, 643 S.E.2d 172, 175 (Va. 2007). There can be no meeting of the minds, and therefore no contract, "[u]ntil the parties have a distinct intention common to both of them and without doubt or difference." Persinger & Co. v. Larrowe, 477 S.E.2d 506, 509 (Va. 1996) (citing Progressive Constr. Co. v. Thumm, 161 S.E.2d 687, 691 (Va. 1968)); Silicon Image, Inc., 271 F. Supp. 2d at 851–52 ("Assent is not mutual, unless the parties intend to agree upon the same thing in the same sense."). The court must determine the intention of the parties as objectively manifested. Orbis, Inc. v. Objectwin Tech., Inc., No. 7:06–cv–372, 2007 WL 2746958, at *4 (W.D. Va. Sept. 20, 2007); Phillips, 643 S.E.2d at 175 ("We ascertain whether a

---

[3] Here, 811 is a material term. Despite Dowdy Farm's contention that the notification provisions of the 811 statute would be read into the contract regardless, both parties at varying points insisted that the 811 term be included in the contract. Dkt. 19–10. See Silicon Image, Inc.,, 271 F. Supp. 2d at 851–52 (finding license agreements to be material given that "[e]ach party acknowledge[d] as much by asserting that, if its own interpretation of these provisions is not controlling, there is no settlement because there was no meeting of the minds."); Porter v. Porter, No. 5:05–cv–212, 2008 WL 926632, at *6 (W.D.N.C. April 4, 2008) ("[A material term is one] if omitted or modified, would cause the parties to withhold assent or to bargain for a substantially different term.").

3

party assented to the terms of a contract from that party's words or acts, not from his or her unexpressed state of mind.").

**Discussion**

In April 2019, MVP sent a draft Right of Way agreement to Dowdy Farm outlining both the monetary and nonmonetary terms of a proposed resolution. Dkt. 27, 27–1. The parties continued, thereafter, to negotiate the terms of the Right of Way agreement for several months primarily through e-mail exchanges. See Dkt. 27–2; Dkt. 19–2. Dowdy Farm and MVP reached an agreement on the amount of compensation MVP would pay for a right of way agreement to construct and operate a natural gas pipeline across Dowdy Farm's property. Dkt. 19–2. The parties did not agree, however, on all material terms including what, if any, activities Dowdy Farm could engage in on the right of way and specifically whether Dowdy Farm would be required to comply with the 811 statute if it became necessary to repair the waterline which crossed the pipeline. Eventually, MVP sent an e-mail dated July 30, 2019, that "[it] has no problem with [the landowner] repairing the water line if it becomes necessary after [it] is off the property, as long as [the landowner] *complies with 811*." Dkt. 19–2 (emphasis added). Dowdy Farm replied on July 31, 2019, stating "we have a settlement." Id.

Dowdy Farm now insists that the parties entered into an enforceable contract as of July 31, 2019, when it accepted MVP's July 30, 2019, proposal and stated "we have a settlement." Id. This settlement, as it turns out, fell apart as the parties sought to incorporate the proposed agreement into the Right of Way agreement. In fact, the parties' conduct and surrounding circumstances after July 31 show that the e-mail exchange on July 30 and 31 amounted to a mere agreement to agree rather than a binding contract. Specifically, the continued negotiations regarding the language to incorporate into the Right of Way agreement showed that the parties

4

continued to discuss specific provisions in the Right of Way agreement related to, among other things, broad actions that Dowdy Farm could take in the right of way after MVP completed construction of the pipeline. These negotiations included whether Dowdy Farm would be required to provide notice to MVP if it intended to come onto the right of way to repair any break in the waterline which crossed the pipeline. Dkt. 30–1, p. 15–16. Moreover, "[w]here parties intend to culminate their agreement with a signed contract, there is a strong presumption that no contract exists until a contract is formally signed and in writing." Moorman v. Blackstock, Inc., 661 S.E.2d 404, 410 (Va. 2008); see also Southern Elec. Servs., Inc. v. Cornerstone Detention Prods, Inc., No. 7:10–cv–76, 2010 WL 2233664, at *5 (W.D. Va. June 3, 2010) ("The purpose of a signature on a contract is to show mutual assent.") (citing 17A Am. Jur. 2d Contracts § 34). Overcoming this presumption requires "strong evidence." Andrews v. Sams, 353 S.E.2d 735, 737 (Va. 1987) (citing Boisseau v. Fuller, 30 S.E. 457 (Va. 1898)). Accordingly, I conclude that the parties did not have an enforceable contract as of July 31, 2019.

Importantly, the parties attach vastly different interpretations of the term "complies with 811." See e.g., Dkt. 19–6. Dowdy Farm asserts that the 811 statute allows it, as a landowner, to hand dig in the right of way without following the 811 notification process. Id. Specifically, Dowdy Farm argues the 811 statute excuses a landowner from the notification requirement when (1) an owner or occupant hand digs near an underground utility line or (2) there is an emergency.[4] Dkt. 19–6, p. 2–5. Conversely, MVP contends that the 811 statute would prohibit

---

[4] Dowdy Farm suggests that the 811 statute provides landowners with substantive rights. The 811 statute specifically provides that "[e]xcept as specifically set forth herein, the provision of this chapter shall not be construed to either abrogate any rights, duties, or remedies existing under the law." Va. Code § 56-265.25(C). The "owner or occupant" exception to hand digging does not apply to the landowner as the owner of the servient estate. See, e.g., United States v. Sea Gate, Inc., 397 F. Supp. 1351, 1358 (E.D.N.C. 1975) (stating common law rule that servient landowner cannot use fee in way that obstructs or materially impairs the easement owner's use and enjoyment and further suggesting that activity "which would result in increased cost or inconvenience . . . or which would create a safety hazard" constitutes a material impairment); see also Columbia Gas Transmission, LLC v. Vlahos, 94 F. Supp. 3d 728 (E.D. Va. 2015) (prohibiting servient estate from building fence over easement);

hand digging in the right of way near the constructed pipeline. Beyond the parties' negotiation of the correct interpretation of 811 itself, the parties also attempted to draft language contracting around 811, but MVP and Dowdy Farm rejected the proposals each offered.[5] Dkt. 19–10.

  The parties agreed to include a term requiring "compl[iance] with 811," but they disagree over the interpretation of the term. Their conflicting interpretations prevented them from reaching a meeting of the minds. First, the parties clearly did not "agree upon the same thing in the same sense." Silicon Image, Inc., 271 F. Supp. 2d at 851–52; see, e.g., Dkt. 19–10, p. 7. Second, the parties' disagreement was not "unexpressed." Phillips, 643 S.E.2d at 175. Each party's intent and its specific interpretation was plainly expressed during the ongoing negotiation. See Dkt. 19–8, p. 4 ("MVP cannot allow language in the right of way documents that does not require strict adherence to the one-call system"); Dkt. 19–6, p. 2 ("[The one-call system has] a specific exemption . . . [t]hat is all we are asking for: the right for Dowdy Farm's principal to hand-excavate to expose and repair a broken water line."). Because the parties did not have a meeting of the minds, they failed to properly form their agreement. Thus, the negotiations cannot constitute an enforceable settlement agreement.

---

Mississippi River Transmission Corp. v. Wachter Const. Inc., 731 S.W.2d 445, 449–50 (Mo. Ct. App. 1987) (construction of parking lot substantially interfered with pipeline); El Paso Field Service, Inc. v. Minvielle, 867 So. 2d 120 (La. Ct. App. 2004) (finding servient estate owner impermissibly interfered with right of way). Moreover, the emergency exception would not apply to the situation proposed by Dowdy Farms: a two-day period without running water. § 265.15:1 (defining emergency as "a sudden or unexpected occurrence involving a clear and imminent danger, demanding immediate action to prevent or mitigate loss of, or damage to life, health, property, or essential public services"). In short, the 811 statute does not permit the interpretation Dowdy Farm urges. That does not mean, however, that MVP and Dowdy Farm could not agree to reach that agreement.

[5] MVP proposed standard language requiring notice "at least 60 days before beginning any excavation" and language requiring that landowner "(i) contact the applicable One-Call (Call Before You Dig, 811); and (ii) provide Grantee 72 hours advance written notice of the same." Dkt. 19–10, p. 10. Dowdy Farm similarly requested language stating that "Grantor's agreement to contact Grantee prior to any excavation within the Right of Way and Easement is subject to Virginia Code Sec. 56-265.15:1," which it previously interpreted as allowing digging under the two statutory exemptions. Dkt. 19–10, p. 4.

**Conclusion**

The nature of the dispute that Dowdy Farm and MVP raise in the pending motion is for the court to interpret what is meant by the term "complies with 811." The parties are free to contract as they see fit for the nature of the work Dowdy Farm can complete in the right of way and what notice it would have to give MVP before beginning that work. The parties did not agree on the notice required before Dowdy Farm can begin working near the constructed pipeline. It is not the court's place to interpret what the parties intended. They clearly did not reach an agreement on all material terms and have not reached an enforceable settlement. Thus, I recommend **DENYING** Dowdy Farm's Motion to Enforce Settlement. The parties are instructed to contact Judge Dillon's chambers to set the case for trial.

The Clerk is directed to transmit the record in this case to Judge Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

Entered:  January 22, 2021

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge