IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MOUNTAIN VALLEY PIPELINE, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:19-cv-223 |
| ) | |
| 8.60 ACRES OF LAND, OWNED BY ) | By: Elizabeth K. Dillon |
| DOWDY FARM, LLC, et al., ) | United States District Judge |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

At issue in this condemnation action brought by Mountain Valley Pipeline, LLC (MVP) is whether MVP reached an enforceable settlement agreement with landowner Dowdy Farm, LLC. Dowdy Farm moved to enforce the settlement, and the court referred the motion to U.S. Magistrate Judge Robert S. Ballou for a Report and Recommendation (R&R). (Dkt. No. 19.) On January 22, 2021, Judge Ballou issued a Report and Recommendation that the court deny Dowdy Farm's motion because the parties did not have a meeting of the minds as to all material terms. (Dkt. No. 31.) Dowdy Farm's objection to the R&R is before the court for resolution. (Dkt. No. 32.)

After de novo review of the pertinent portions of the record, the report, and the filings by the parties, in conjunction with the applicable law, the court agrees with the magistrate judge's recommendation. Accordingly, the court will adopt the R&R and deny Dowdy Farm's motion for enforcement.

I.  BACKGROUND

The court adopts the recitation of facts and procedural background as set forth in the report. (R&R 1–2.) For present purposes, the court notes that after this court granted immediate

possession to MVP of easements on several properties, including two properties owned by Dowdy Farm (Dkt. Nos. 531, 537, Case No. 7:17-cv-492), MVP and Dowdy Farm commenced settlement negotiations on the issue of just compensation. Mediation was unsuccessful, but the parties continued their efforts to reach an agreement. In late July of 2019, the parties seemed to reach a settlement regarding just compensation and various nonmonetary terms, including a term requiring landowner Michael Williams to "comply with 811" if he engaged in any digging activity to prepare a water line which ran across MVP's pipeline easement. (Dkt. No. 19-2.) The deal fell apart, however, and as the R&R explains, there was no meeting of the minds as to the meaning of the term "comply with 811." The parties "did not agree on the notice required before Dowdy Farm can begin working near the constructed pipeline. It is not the court's place to interpret what the parties intended. They clearly did not reach an agreement on all material terms and have not reached an enforceable settlement." (R&R 7.)

The 811 program is the national "call before you dig" telephone number, also known as the one-call system. MVP and other pipeline contractors are required to participate in the one-call system. 49 U.S.C. § 60114(a); 49 C.F.R. § 192.614.

In 2015, the Pipeline and Hazardous Material Safety Administration (PHMSA) adopted minimum standards for protection of pipelines from excavation safety. *See* Pipeline and Hazardous Material Safety Administration, *Pipeline Safety: Pipeline Damage Prevention Programs*, 80 Fed. Reg. 43836-01 (July 23, 2015). PHMSA found that "excavation damage is a leading cause of natural gas and hazardous liquid pipeline failure incidents." *Id.* at *43836. PHMSA noted that many state programs had various exemptions, including for homeowners using hand tools to excavate. *Id.* at *434848, 43850–51. PHMSA determined, however, that there should be no similar exemptions in its regulations. *Id.* PHMSA found that the definition of

excavation should be "broad and inclusive." *Id.* Thus, in the PHMSA regulations, excavation is defined as "all excavation activity involving both mechanized and non-mechanized equipment, including hand tools." 49 C.F.R. § 196.3. Excavator is defined as "any person or legal entity, public or private, proposing to or engaging in excavation." *Id.* The regulations require all excavators to use "an available one-call system before excavating to notify operators of underground pipeline facilities" and "wait for the pipeline operator to arrive at the excavation site and establish and mark the location of its underground pipeline facilities before excavating." *Id.* § 196.103. It is a federal crime to knowingly and willingly engage in an excavation activity without first using the one-call system where the excavation results in damages. 49 U.S.C. § 60123(d).

At the state level, Virginia has enacted the Underground Utility Damage Prevention Act. Va. Code §§ 56-265.14, *et seq.* Under the Act, persons are required to call a notification center and wait for utility operators to mark their lines before any excavation. Va. Code § 56-265.17. Operators have at least 48 hours to mark their lines. *Id.* Unlike the federal regulations, the Virginia Act exempts certain activity, including an exemption for "any hand digging performed by an owner or occupant of a property." Va. Code § 56-265.15:1. PHMSA has approved Virginia's program, so the federal agency will defer to the state on civil enforcement against excavators. 49 C.F.R. § 196.205.

## II. DISCUSSION

### A. Standard of Review

Under Rule 72(b)(3) of the Federal Rules of Civil Procedure, a district judge is required to "determine de novo any part of the magistrate judge's disposition that has been properly objected to." The de novo requirement means that a district court judge must give "fresh

consideration" to the objected-to portions of the magistrate judge's report and recommendation. *See Wilmer v. Cook*, 774 F.2d 68, 73 (4th Cir. 1985); *United States v. Raddatz*, 447 U.S. 667, 675 (1980). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or recommit the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). Objections made to the report must be made with "sufficient specificity so as reasonably to alert the district court of the true ground of the objection." *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007). General or conclusory objections are the equivalent of a waiver. *Id.*

**B. Analysis**

In the Fourth Circuit, federal law governs the enforceability of settlement agreements reached in federal cases. *See Nielsen v. United Property & Casualty Ins. Co.*, No. 2:18-cv-02310-DCN, 2021 WL 288428, at *2 (D.S.C. Jan. 28, 2021) (citing *Gamewell v. Mfg., Inc. v. HVAC Supply, Inc.*, 715 F.2d 112, 116 (4th Cir. 1983)). District courts "have inherent authority, deriving from their equity power, to enforce settlement agreements." *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 540 (4th Cir. 2013). In order to exercise this power, a district court "(1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions." *Id.* at 540–41. In making these determinations, courts generally rely on standard contract principles. *Topiwala v. Wessell*, 509 F. App'x 184, 186 (4th Cir. 2013). While federal law controls the enforceability of settlement agreements reached during federal litigation, "federal courts may apply state law—not because of any compulsion to do so . . . but because federal interests would not be impaired by doing so, state law is already there, people are familiar with it, and the state rule is not inimical to federal interests." *Hayes v. SAFE Federal Credit Union*, Civil Action No. 3:19-cv-0881-MGL-TER, 2020 WL 5988067, at *3 n.2 (D.S.C. Feb. 4,

2020) (quoting Charles Alan Wright et al., Fed. Practice & Procedure § 4514, at 474–76 (1996)).

"A settlement agreement is a matter of contract, and without a meeting of the minds as to all material terms, there can be no enforceable settlement agreement as a matter of law." *Intersections, Inc. v. Loomis*, No. 1:09-CV-597, 2010 WL 4623877, at *2 (E.D. Va. Nov. 3, 2010). The court must conclude that an agreement has been reached on all material terms; otherwise, the purported agreement is unenforceable. *Ozyagcila v. Davis*, 701 F.2d 306, 308 (4th Cir. 1983). "Ultimate resolution of the question whether there has been a binding settlement involves a determination of the parties' intention, as objectively manifested." *Snyder-Falkinham v. Stockburger*, 457 S.E.2d 36, 39 (Va. 1995). The party seeking to enforce the settlement agreement has the burden of proving the existence and the terms of the agreement. *Bralley v. Carey*, No. 3:10-CV-138, 2010 WL 4668936, at *2 (E.D. Va. Nov. 12, 2010). "Absent agreement, a party may demand and receive full judicial process, including a trial, for the resolution of legitimate disputes." *Hensley*, 277 F.3d at 540.

The R&R recounted the negotiations over a Right of Way agreement between the parties, starting in April 2019 and continuing through July 2019. (R&R 4–6.) The parties agreed on the amount of compensation for the easement, but they did not agree "on all material terms including what, if any, activities Dowdy Farm could engage in on the right of way and specifically whether Dowdy Farm would be required to comply with the 811 statute if it became necessary to repair the waterline which crossed the pipeline." (R&R 4.) On July 30, 2019, MVP sent an email to Dowdy Farm stating that it "has no problem with [the landowner] repairing the water line if it becomes necessary after MVP is off the property, as long as [the landowner] complies with 811." (Dkt. No. 19-2.) Dowdy Farm replied on July 31, 2019, stating "we have a settlement." (*Id.*)

The parties then attempted to incorporate the proposed language into the Right of Way

agreement. While Dowdy Farm argued that the parties entered into an enforceable contract as of July 31, 2019, when Dowdy Farm accepted MVP's proposal and stated "we have a settlement," the R&R found that this was a "mere agreement to agree rather than a binding contract" because the "continued negotiations regarding the language to incorporate into the Right of Way agreement showed that the parties continued to discuss specific provisions in the Right of Way agreement." (R&R 4–5.) These negotiations included whether Dowdy Farm would be "required to provide notice to MVP if it intended to come onto the right of way to repair any break in the waterline which crossed the pipeline." (R&R 5.)

The parties attached (and continue to attach) "vastly different interpretations of the term 'complies with 811.'" (*Id.*) Dowdy Farm argues that it was entitled to the exemptions from advance notice set forth Virginia's 811 statute, including when an owner or occupant hand digs near an underground utility line, or when there is an emergency. (Dkt. No. 19-6 at 2–5.) Dowdy Farm may be entitled to conduct such activities without giving notice, as a general matter, under Virginia law, but this does not mean that there was a meeting of the minds such that MVP and Dowdy Farm incorporated this understanding into their attempt to reach a contract. Put another way, MVP was entitled, as a condition of coming to a Right of Way agreement with Dowdy Farms, to insist that Dowdy Farm comply with the higher standards set forth in the federal regulations. As MVP states in its response to Dowdy Farm's objection, MVP strives to implement the federal policy. (MVP Response 4, Dkt. No. 33.) As to the state requirements, the parties did not reference the Virginia Underground Utility Damage Prevention Act and they put no conditions or limitations on compliance with 811.

MVP's understanding, and the lack of understanding between the parties, is confirmed by MVP's negotiation stance after July 31, 2019, when the parties seemed to have come to an

agreement, but in retrospect, did not.  MVP provided Dowdy Farm with two excavation provisions for its review, both of which would have required Dowdy Farm to call 811 and provide MVP with notice before the excavation.  (Dkt. No. 19-10 at 10 of 18.)  Dowdy Farm rejected these provisions, further demonstrating that the parties did not, in fact, have a meeting of the minds on July 31, 2019, or at any time thereafter.

  Dowdy Farm argues that neither party disputes that the parties reached a settlement agreement and that the magistrate judge's only task was to determine the terms of that agreement.  Thus, the argument goes, the magistrate judge erred by determining that no agreement existed in the first instance.  The court disagrees because Dowdy Farm undoubtedly does not desire a contract that incorporates MVP's understanding that would require Dowdy Farm to comply with the federal 811 standard.  Dowdy Farm does not contest the R&R's finding that 811 is a material term.  (R&R 3 n.3.)  The parties' disagreement over the meaning of that material term in the contract is plain.  As MVP states, the "agreement that MVP thought existed is not the agreement that Dowdy Farm contends existed."  (MVP Response 10.)

  Dowdy Farm also argues that the R&R erred by considering parol evidence.  The evidence considered by the magistrate judge included several pages of email exchanges which show the negotiations between MVP and Dowdy Farm, emails that were submitted by Dowdy Farm in support of its motion to enforce the settlement.  (*See* Dkt. Nos. 19-1–19-10, 30-1.)  Regardless of which party submitted this evidence, the parol evidence rule only applies when there is a "complete, unambiguous, unconditional, written instrument."  *Amos v. Coffey*, 320 S.E.2d 335, 337 (Va. 1984).  As discussed above, that is not the case in this instance.

  In sum, the court agrees with the R&R that there was no meeting of the minds, and thus, no enforceable settlement contract.

## III. CONCLUSION

For the foregoing reasons, the court will issue an order overruling Dowdy Farm's objections, adopting the R&R, and denying Dowdy Farm's motion to enforce settlement.

Entered: March 4, 2021.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge